FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

ROBERT E. GLENN, as Trustee )
of the T.A. CARTER, Jr. and )
JEANETTE W. CARTER REVOCABLE )
TRUST, )
                        )
        Plaintiff, )
                        )     Civil No. 2005-145
      v. )
                        )
OSWAINIO DUNLOP, )
                        )
        Defendant. )
_____ )

ATTORNEYS:

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
     *For the Plaintiff.*

**Oswainio Dunlop,**
     *Pro se defendant.*

**MEMORANDUM OPINION**

**GÓMEZ, C.J.**

     This matter was tried from September 22, 2008 to September 23, 2008. Following the trial, both parties, pursuant to court order, submitted proposed findings of fact and conclusions of law.[1] Pursuant to Rule 52(a) of the Federal Rules of Civil

_____

[1] In his post-trial memorandum, the plaintiff proposes conclusions of law only with respect to his claims for slander of title and intentional harm to a property interest as well as his requests for declaratory and injunctive relief.

The defendant's post-trial memorandum contains proposed

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 2

Procedure, the Court now enters its findings of fact and

conclusions of law.

## I. <u>FINDINGS OF FACT</u>

In 1907, John J. Henry ("Henry") acquired title to property

on St. John, U.S. Virgin Islands, consisting of approximately 3.6

acres, described as Consolidated Parcel No. 5F Estate Haulover,

East End Quarter, as shown on P.W.D. No. D9-7161-T002 (the

"Property").  In 1933, Henry died intestate.  Henry's interest in

the Property was never probated.  The Property descended via

intestate succession to several of Henry's children and

grandchildren.

At some point after Henry's death, Guy Henry Benjamin

("Benjamin"), a member of the Henry family, obtained powers of

attorney from other Henry family members.  In 1967 and 1969,

acting pursuant to those powers of attorney, Benjamin leased the

Property to an entity known as East End Corporation.  These

leases were due to expire on December 31, 1998.

In 1977, T.A. Carter ("Carter"), a now-retired architect

from Virginia, purchased the leases from East End Corporation.[2]

findings of fact.  His memorandum also includes a section
entitled "Conclusion of Law."  That section does not in fact
propose any pertinent conclusions of law.

[2]  Carter has been coming to the Virgin Islands since
approximately 1970.  For several years, he rented a small beach
house on the Property.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 3

In 1979, the parties extended the lease term through 2008.

In the early 1990s, Benjamin began negotiations with Carter for an outright sale of the Property before the termination of the leases.  In the course of these negotiations, they discussed the creation of a college scholarship for St. John children.  Carter and Benjamin agreed to a purchase price of $170,000.

In 1997, Benjamin again obtained powers of attorney from several Henry family members.  These family members included Benjamin's cousin, Lucille Henry Dunlop ("Lucille Dunlop"), and Benjamin's brother, George H. January ("G. January").  Lucille Dunlop is the mother of the *pro se* defendant, Oswainio Dunlop ("Dunlop").[3]

Benjamin subsequently conveyed the Property by deed of gift to the Trustees of Roanoke College (the "College"), subject to an option held by Carter to purchase the Property from the College.  Contemporaneously with Benjamin's conveyance, four other Henry family members conveyed their interest to the Trustees of Roanoke College via quitclaim deed.  The Property was conveyed to the College rather than directly to Carter because the Henry family

---

[3]  In light of Dunlop's *pro se* status, the Court has held Dunlop's pleadings "to a less stringent standard than pleadings from attorneys." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court has kept in mind, however, that self-representation "is not a license [excusing compliance] with relevant rules of procedural and substantive law[.]" *Faretta v. Calif.*, 422 U.S. 806, 835 n.46, (1975).

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 4

wished for the College to manage the scholarship fund for St.

John children using the proceeds from the sale of the Property.

In 1999, the College filed an action in the Superior Court

of the Virgin Islands to quiet title to the Property.[4]  On

January 16, 2002, the Superior Court issued a judgment declaring

that the College owns the Property in fee simple absolute.[5]

On November 25, 2002, the T.A. Carter, Jr. and Jeanette W.

Carter Revocable Trust (the "Trust") purchased the Property from

the College for $135,000.[6]

The Property constitutes a portion of the Trust's land

holdings on St. John.  After the sale of the Property from the

College to the Trust, the Trust contracted to sell all of its

land holdings, including the Property, to a third party for

---

[4]  At all times relevant in this matter, the Superior Court
was known as the Territorial Court of the Virgin Islands.
Effective January 1, 2005, however, the name of the Territorial
Court changed to the Superior Court of the Virgin Islands
pursuant to Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004
V.I. Legis. 6687 (2004).  For the sake of simplicity, the Court
will refer only to the Superior Court.

[5]  Glenn has provided a copy of the Superior Court judgment.
That copy is certified by the Recorder of Deeds.  The Court has
taken judicial notice of the Superior Court judgment. *See* Fed. R.
Evid. 201(b); *see also Opoka v. INS*, 94 F.3d 392, 394 (7th Cir.
1996) (recognizing that court documents from state proceeding may
be subject to judicial notice).

[6]  The purchase price of $135,000 was lower than the
originally negotiated price because Carter incurred expenses in
clearing title to the Property.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 5

$10,600,000.[7]  That transaction did not close because the Trust could not guarantee clear title to the Property.

The dispute in this matter began at some point after Dunlop learned of the Trust's contract to sell its land holdings on St. John.[8]

On July 12, 2005, Dunlop contacted Carter to arrange a meeting in the Virgin Islands.  That meeting never took place. Later that week, Dunlop spoke by telephone with J. Brion Morrisette ("Morrisette"), a Virgin Islands attorney who has represented Carter and the Trust in various legal matters. During their conversation, Dunlop told Morrisette that Benjamin had obtained powers of attorney from Dunlop's mother, Lucille, and G. January on the assumption that the Property would be leased, not sold.  Dunlop also stated that neither his mother nor G. January had read the documents Benjamin had asked them to sign.

On August 16, 2005, at Dunlop's request, G. January and his wife, Eirleen Idoria January (collectively, the "Januarys"), executed documents entitled "Truth Affidavits."  In those

---

[7]  Most of the proceeds from the sale of the Property were not earmarked for the scholarship fund.  Indeed, there is scant evidence in the record of any significant amount of scholarship funds for St. John students.

[8]  Of his own accord, Dunlop began looking into his mother's land holdings in the Virgin Islands after his father's death in 2001.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 6

documents, the Januarys attested that in granting power of
attorney to Benjamin in 1997, they had been told that the
Property would be leased, not sold, for the purpose of creating a
college scholarship for St. John children.  They also averred
that they had not understood the power-of-attorney documents they
had signed.  On August 17, 2005, Dunlop recorded the affidavits
at the Office of the Recorder of Deeds.  On August 31, 2005,
Dunlop recorded other documents at the Office of the Recorder of
Deeds, including a 1992 document from Dunlop's mother, granting
Dunlop power of attorney.

On August 26, 2005, Morrisette wrote a letter to the
Januarys in which he asked them to cancel their "Truth
Affidavits."  On September 4, 2005, Dunlop wrote a letter to
Morrisette and Lisa Sweet ("Sweet"), another attorney
representing the Trust, in which he reiterated that Benjamin had
obtained powers of attorney from Dunlop's mother, Lucille, and G.
January, without disclosing that the Property would be sold.
Dunlop also stated that litigation would ensue if the dispute was
not settled out of court.

On September 7, 2005, the plaintiff in this matter, Robert
E. Glenn ("Glenn"), as trustee of the Trust, filed this seven-
count action against Dunlop, the Januarys, and other family
members.  Glenn asserts the following causes of action: slander
of title; libel and slander; civil extortion; abuse of process;

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 7

and intentional harm to property interest.  Glenn claims damages
in excess of $5 million.  He seeks an injunction to compel Dunlop
to remove the documents Dunlop has recorded against the Property
and to prevent him from filing documents against the Property in
the future.  He also requests a declaration that the Trust owns
the Property in fee simple absolute and that Dunlop holds no
interest in the Property.

On September 28, 2005, the Januarys executed documents
entitled "Release and Affirmation."  In those documents, the
Januarys rescinded the Truth Affidavits they had earlier signed,
affirmed the power of attorney given to Benjamin in 1997 and
stated that Dunlop was not authorized to represent them in any
capacity.

Thereafter Glenn amended his complaint and named Dunlop as
the sole defendant.[9]  Dunlop answered the complaint with general
denials of the essential allegations and counterclaimed for
damages on several theories.[10]

On October 21, 2005, Dunlop caused other documents to be
filed against the Property, including a notice of *lis pendens*,
which referenced this action.

---

[9]  Any reference to Glenn's complaint is intended to refer
to his first amended complaint.

[10]  Dunlop in fact filed two sets of answers and
counterclaims.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 8

On January 27, 2006, on Dunlop's petition, the Superior

Court appointed Dunlop special administrator of Henry's estate.

On February 1, 2006, the court granted letters of special

administration to Dunlop.  The College thereafter filed an

informative motion in the Superior Court, stating that that court

had earlier quieted title to the Property in the College.  On

April 3, 2006, the Superior Court held a hearing and subsequently

revoked Dunlop's appointment as special administrator of Henry's

estate.  The Superior Court further ordered the matter to remain

open for thirty days to permit any of Henry's heirs to file an

amended petition establishing an interest in the Property,

failing which the Petition would be dismissed.[11]

## II.  CONCLUSIONS OF LAW

### A.  Glenn's Claims

Glenn asserts seven counts against Dunlop.  The Court

addresses each in turn, though not necessarily in the order

presented in Glenn's complaint.

#### 1.  Count I: Slander of Title

In Count I, Glenn asserts a slander of title claim.  To

prevail on such a claim, the plaintiff must show the following:

"a) falsity of the statement; b) injury to pecuniary interests,

such as property, products, or business; c) publication to a

---

[11]  The record does not indicate whether any of Henry's heirs
filed an amended petition.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 9

third person; d) special harm in the form of actual pecuniary

loss; and e) intent, malice, or fault to cause harm." *Manns v.*

*Leather Shop*, 960 F. Supp. 925, 930 (D.V.I. 1997) (quoting

Restatement (Second) of Torts § 623A (1977)).[12]

The evidence Glenn presented at trial does not support his

slander of title claim.  Glenn failed to present any evidence

demonstrating that Dunlop entertained doubts about the truth of

the documents he filed against the Property.  Indeed, given

Glenn's election not to call Dunlop as a witness, there is

absolutely no evidence of Dunlop's state of mind.  In fact, the

record reflects that Dunlop had a good faith belief that he was

protecting what he thought was his family's interest in the

Property.  Glenn has therefore not proven by a preponderance that

the first element of his slander of title claim is satisfied. *See*

Restatement (Second) of Torts § 623A(b) (noting that slander of

title liability attached only to one who "knows that the

statement is false or acts in reckless disregard of its truth or

falsity"); *Grove v. Dun & Bradstreet, Inc.*, 438 F.2d 433, 435 (3d

Cir. 1971) (noting that the plaintiff must proffer "sufficient

evidence to permit the conclusion that *the defendant in fact*

---

[12]   *See* V.I. CODE ANN. tit. 1, § 4 ("The . . . restatements of
the law . . . shall be the rules of decision in the courts of the
Virgin Islands in cases to which they apply, in the absence of
local laws to the contrary.").

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 10

*entertained serious doubts as to the truth of his publication*")
(emphasis supplied; quotation marks and citations omitted).

Glenn has also failed to prove actual pecuniary losses.  To
do so, he would have had to provide evidence of "actual and
concrete damages capable of being estimated in money, established
by specific instances [and] expressed in figures." *Beverly
Enters. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999) (citation
omitted).  Glenn has not done so.  To the extent he relies on his
evidence showing that Dunlop's recorded documents clouded the
Property's title, Glenn has still not sufficiently proven damages
for slander of title purposes. *See*, *e.g.*, *Gilbert v. Beaver Dam
Ass'n of Stratford*, 858 A.2d 860, 867 (Conn. App. Ct. 2004) ("[A]
clouded title, alone, does not constitute damages per se.
Rather, a plaintiff must present evidence of how the clouded
title resulted in some pecuniary loss."), *appeal denied*, 866 A.2d
1283 (Conn. 2005).  Similarly, Glenn's evidence of future
pecuniary harm is likewise inadequate. *See Rosenbaum v. City of
New York*, 861 N.E.2d 43, 49 (N.Y. 2006) ("Special damages are an
element of a cause of action for slander of title based upon the
recording of an unfounded claim, and the cause of action does not
arise *until special damages actually result*.") (emphasis
supplied; citation omitted).  Accordingly, the Court will enter
judgment for Dunlop on Count I.

**2.   Count II: Defamation**

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 11

Count II of the complaint asserts a defamation claim.[13]  To prevail on Count II, Glenn needed to prove the following elements at trial:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1977); *see also Smart, Inc. v. V.I. Hous. Auth.*, 320 F. Supp. 2d 332, 340 (D.V.I. 2004) (citations omitted).  "[T]o be actionable a communication must be a misstatement of fact capable of defamatory meaning that is of and concerning the plaintiff*." McDowell v. Paiewonsky*, 769 F.2d 942, 946 (3d Cir. 1985) (footnotes omitted).  "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977).

Glenn has failed to meet his burden of proving that Dunlop made a false or defamatory statement about the Trust or himself. At most, Glenn introduced evidence at trial showing that Dunlop

---

[13]   In fact, that count asserts a libel and slander claim. The elements for defamation and slander claims are identical. *See Carino v. Golden*, Civ. No. 807-82, 1983 V.I. LEXIS 51, at *4 (V.I. Terr. Ct. Mar. 17, 1983).  "Slander consists of the publication of defamatory matter by spoken words . . . ." Restatement (Second) of Torts, § 568 (1977).

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 12

recorded several documents against the Property. Those documents
include powers of attorney, affidavits, letters and contracts,
among other things. Significantly, most of those documents do
not contain any statements made by Dunlop. There are only three
documents that contain statements made by Dunlop himself.

The first such document is a letter dated August 30, 2005,
from Dunlop to Glendina Matthew.[14]  In that letter, Dunlop
recites his understanding of the Property's various transfers
over the years. He also recounts his belief that the Property
was to be used to fund a scholarship for St. John children, but
that no scholarship money had ever been distributed. Dunlop also
voices his view that Morrisette falsified public records.

There is nothing in Dunlop's August 30, 2005, letter that
would expose him to defamation liability, at least with respect
to Glenn and the Trust. First, there is nothing in that letter
that can be characterized as harmful to the Trust's reputation.
Indeed, the Trust is not even mentioned in the letter. Second,
to the extent Dunlop's statement about the absence of scholarship
funding could be construed as defamatory, that statement still
does not subject Dunlop to liability. The trial testimony
reflects that, notwithstanding the purported purpose of the

---

[14]  The letter does not indicate who Glendina Matthew is or
what, if any, connection she has to this litigation. Another
document that Dunlop recorded reflects that she is a Notary
Administrator at the Office of the Lieutenant Governor of the
Virgin Islands.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 13

Trust's purchase of the Property, no Virgin Islands student had benefitted from a scholarship at the time Dunlop made his statement. *See* Restatement (Second) of Torts § 581A (1977) ("One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true."); *see also United States Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990) (noting that a "defendant . . . can defend against a defamation action by proving the truth of the statement"). Finally, to the extent the letter makes a defamatory statement about Morrisette, the Court is unaware of any authority that would allow Glenn to assert a defamation claim against Dunlop for defamatory statements about a third party. *See*, *e.g.*, *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 821 (7th Cir. 2008) (noting that individuals "would not have standing to pursue relief for the libel, slander, or disparagement injury of a third party").

The second document, a letter from Dunlop to J. Brion Morrisette and Lisa Sweet, dated September 4, 2005, likewise does not support Glenn's defamation claim against Dunlop. In that letter, Dunlop states that his mother and other family members were told lies. Importantly, those alleged lies appear to have originated with Guy Henry Benjamin, to whom those family members signed over powers of attorney. Here again, there is no false or defamatory statement about the Trust itself.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 14

The third document containing statements made by Dunlop is an affidavit dated September 15, 2005.  In that affidavit, Dunlop restates his essential allegation in this case: that his mother signed a power of attorney in favor of Guy Henry Benjamin on the assumption that the Property would be used to fund a scholarship for St. John children.  Nothing in that letter contains an even obliquely false or defamatory statement about Glenn or the Trust.

In short, Glenn has not met his burden of proving by a preponderance of the evidence that Dunlop made false or defamatory statements about the Trust or himself.  Nor has Glenn produced preponderate evidence of the Trust's diminished reputation as a result of Dunlop's alleged defamatory statements. Those failures are fatal to Glenn's defamation claim. *See*, *e.g.*, *Harbor Lands, L.P. v. City of Blaine*, Civ. No. C06-1370RAJ, 2008 U.S. Dist. LEXIS 101154, at *31 (W.D. Wash. Dec. 5, 2008) (concluding that the plaintiff could not prevail on its defamation claim because it "has not offered any reason to conclude that the statements are false"); *Saidi v. Washington Metro. Area Transit Auth.*, 928 F. Supp. 21, 25 (D.D.C. 1996) ("As the plaintiff failed to produce evidence of a slanderous or a false statement, [his defamation] count must fail."). Accordingly, the Court will enter judgment for Dunlop on Count II.

**3.    Count IV: Civil Extortion**

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 15

In Count IV, Glenn asserts a civil extortion claim.  No Virgin Islands statute or any published Virgin Islands case recognizes such a claim.  The Court is unaware of any other authority supporting the existence of such a claim under Virgin Islands law.[15]  Glenn has pointed to no such authority. Accordingly, the Court will enter judgment for Dunlop on Count IV's civil extortion claim.

### 4.   Count V: Abuse of Process

---

[15]  Many other jurisdictions similarly do not recognize such a claim. *See*, *e.g.*, *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 555 (E.D.N.C. 2005) ("[A] survey of the applicable North Carolina authority indicates that no civil cause of action exists for the tort of extortion."); *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, Civ. No. 96-4488, 1997 U.S. Dist. LEXIS 2375, at *16 (E.D. Pa. Feb. 28, 1997) (noting that Pennsylvania courts have failed to recognize a cause of action for civil extortion) (citation omitted); *Various Mkts. v. Chase Manhattan Bank, N.A.*, 908 F. Supp. 459, 468 (E.D. Mich. 1995) ("This Court does not believe that . . . the Michigan courts would recognize a civil extortion suit . . . .").

Even assuming that a civil extortion claim were viable under Virgin Islands law, Glenn would still not prevail on such a claim.  To prevail on such a claim, a plaintiff must prove:

(1) there is a threat or action taken without legal justification; (2) the action or threat was of such character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and that which it was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection.

*CFJ Mfg., L.P. v. Sweetworks, Inc.*, Civ. No. 2004-70, 2005 U.S. Dist. LEXIS 33953, at *33-34 (M.D. Fla. Apr. 14, 2005) (applying Texas law; citation omitted).  Glenn has fallen far short of adducing any evidence, much less preponderance evidence, that Dunlop committed all of the above elements.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 16

Count V asserts a claim for abuse of process.  Under Virgin Islands law, "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977).  An abuse of process claim may lie "where the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281 (3d Cir. 2006) (unpublished; stating Pennsylvania law; citation omitted). Examples of conduct that may constitute an abuse of process include intentionally withholding critical documents, ignoring court orders, permitting false testimony at depositions and misrepresenting facts to opposing counsel and the court. *See Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 301 (3d Cir. 2003).

At trial, Glenn failed to adduce evidence establishing Dunlop's liability for abuse of process.  There is no evidence that Dunlop initiated or used any legal process against Glenn, or that Dunlop used such a process for an ill-founded purpose.[16]  As

_____

[16]  To the extent Glenn maintains that Dunlop's recordation of documents against the Property constitutes an abuse of process, the Court is unconvinced.  Glenn points to no authority whatever for the proposition that recording documents against a deed constitutes legal process.  The Court is unaware of any such

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 17

such, the Court does not find that Glenn has met his burden of proof with respect to his abuse of process claim. *See*, *e.g.*, *Marable*, 176 Fed. Appx. at 282 (finding no abuse of process where "there is simply no evidence in the record" that certain litigants "had as their primary purpose some objective for which the legal process . . . was not intended"); *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1265 (10th Cir. 1998) (stating that an abuse of process claim may be dismissed where the "plaintiff has failed to prove an improper 'willful act' in the use of legal process") (citations omitted).  Accordingly, the Court will enter judgment for Dunlop on Count V.

    **5.   Count VI: Intentional Harm to a Property Interest**

In Count VI, Glenn asserts a claim for intentional harm to a property interest.[17]  To prevail on such a claim, the plaintiff must show that the defendant intentionally deprived the plaintiff of his legally protected property interest or caused injury to that interest by engaging in conduct that is "generally culpable and not justifiable under the circumstances." Restatement

---

authority.

To the extent Glenn seeks to buttress his abuse of process claim by reference to his civil extortion claim, Glenn comes up short.  As noted earlier, the Court will enter judgment for Dunlop on Glenn's civil extortion claim.  As such, that claim cannot sustain Glenn's abuse of process claim.

[17]  The tort of intentional harm to a property interest is also known as "prima facie tort." *See* Restatement (Second) of Torts § 870 cmt. b (1977).

(Second) of Torts § 871 (1977). "[N]o claim lies [under section 871] 'where there is objective justification for the conduct of the alleged tortfeasor.'" *Government Guar. Fund of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 463 (D.V.I. 1997) (quoting *Avins v. Moll*, 610 F. Supp. 308, 319 (E.D. Pa. 1984), *aff'd*, 774 F.2d 1150 (3d Cir. 1985)). "The sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff." *Id.* (citing *Marcella v. ARP Films*, 778 F.2d 112, 119 (2d Cir. 1985)).

Glenn's claim for intentional harm to a property interest fails mainly for the same reasons his slander of title claim fails. In short, Glenn did not present preponderate evidence at trial to establish that Dunlop's sole purpose in recording documents against the Property was to injure Glenn or the Trust. As noted earlier, all signs indicate that Dunlop's motivation in investigating his family's purported interest in the Property was to safeguard that interest. *See, e.g., Chen v. United States*, 854 F.2d 622, 629 (2d Cir. 1988) (affirming the dismissal of a prima facie tort claim where "the factual allegations . . . fail to establish that malice was the sole motivation for [the defendants'] acts"); *Geisel v. Poynter Prods., Inc.*, 295 F. Supp. 331, 357 (S.D.N.Y. 1968) (finding that evidence of the defendant's good faith defeated the plaintiff's prima facie tort claim). Accordingly, the Court will enter judgment for Dunlop on Count VI.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 19

### 6.   Count VII: Declaratory Judgment

In Count VII, Glenn seeks a declaration from the Court that Dunlop has no interest in the Property, has no authority to record documents against the Property and should be enjoined to discharge all documents he has recorded against the Property.

This Court "may declare the rights and other legal relations of any interested party seeking such declaration when there is a case of actual controversy." *Wyatt v. Gov't of the Virgin Islands*, 385 F.3d 801, 805 (3d Cir. 2004) (quotation marks and citation omitted).   In determining whether an action presents a case or controversy in the declaratory judgment context, the Court must consider three factors: "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

First, "the defendant must be so situated that the parties have adverse legal interests." *Id.* at 648 (quotation marks and citation omitted).   "Although the party seeking review need not have suffered a completed harm to establish adversity of interest, it is necessary that there be a substantial threat of real harm and that the threat must remain real and immediate throughout the course of the litigation." *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (internal quotation marks and citation omitted).

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 20

"Second, the parties must not only retain adverse interests throughout the litigation, but any contest must be based on a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Florio*, 40 F.3d at 1463 (quotation marks and citation omitted).  "Finally, the declaratory judgment must have utility." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995).  In other words, "[i]t must be of some practical help to the parties." *Id.*

Here, there can be little doubt that the controversy between Glenn and Dunlop is actual and substantial.  The parties hotly contest each other's purported ownership interest in the Property.  That controversy is therefore ripe for a decision.  Furthermore, its resolution would give both parties closure regarding their respective interests, if any, in the Property.

At trial, Glenn introduced a judgment from the Superior Court regarding the Property.  In that judgment, the Superior Court held that the College "owns in fee simple absolute and is entitled to the quiet and peaceful possession of the Property, in its entirety." (Pl.'s Exh. 8, at 4).  That judgment also provides that the College's "title to the Property is forever quieted against all claims or demands of defendants and any person claiming under defendants to any estate, right, title, lien or

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 21

interest in the Property." (*Id.*)

Glenn also proved that the College sold its entire interest in the Property to the Trust. That sale establishes privity of title between the College and the Property. *See* Black's Law Dictionary (8th ed. 2004) (defining privity of estate as "[a] mutual or successive relationship to the same right in property, as between grantor and grantee"); *see also* P. *Bordages-Account B, L.P. v. Air Prods., L.P.*, 369 F. Supp. 2d 860, 874 (E.D. Tex. 2004) ("Privity of estate is defined as transfer and delivery of possession from one possessor to the next.") (quotation marks and citation omitted), *aff'd*, 127 Fed. Appx. 724 (5th Cir. 2005) (unpublished). The Trust therefore has the same interest in the Property as the College. *See Berardi v. Ohio Turnpike Com.*, 205 N.E.2d 23, 28 (Ohio Ct. App. 1965) ("[O]ne who is in privity with another because of the transfer of property 'stands in the same shoes' as to the rights of the prior owner in the same property."). In light of this evidence, the Court finds that Glenn has proven by a preponderance of the evidence that the Trust owns the Property in fee simple absolute and that Dunlop has no ownership interest in the Property. The Court will enter a judgment to that effect.

**7. Count III: Injunction**

In Count III, Glenn seeks an injunction to compel Dunlop to discharge and remove the documents Dunlop has recorded against

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 22

the Property and to prohibit Dunlop from recording documents against the Property in the future.

In deciding whether to grant a permanent injunction, the Court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *ACLU v. Black Horse Pike Regional Board of Education*, 84 F.3d 1471, 1477 nn. 2-3 (3d Cir. 1996).  "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof).  If so, the court must then consider the appropriate remedy." *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir. 1984).  The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the court. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982).

Glenn prevails on the first element of his claim for injunctive relief.  He has established that the Trust owns the Property in fee simple absolute and that Dunlop has no interest in the Property.  Glenn has therefore shown actual success on the merits.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 23

To prove irreparable harm, "the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights." *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Here, Glenn has adduced evidence that Dunlop's recorded documents have impeded the Trust from selling the Property. That evidence establishes that the Trust's contract for the sale of the Property to a third party, was terminated because of Dunlop's recorded documents. The evidence also demonstrates that the Trust has since been unable to find another buyer for the Property because of those documents. Given the Trust's inability to sell the Property because of Dunlop's actions, the Court concludes that Glenn has shown irreparable harm. *See, e.g.,* *Hickman v. Turitto*, Civ. No. 2007 U.S. Dist. LEXIS 26157, at *8 (E.D. Tenn. Apr. 9, 2007) (concluding that the defendant's "continued encumbrance of the subject property will cause Plaintiff to suffer irreparable harm"); *Fed. Home Loan Mortgage Crop. v. Dietrich*, Civ. No. 01-72268, 2001 U.S. Dist. LEXIS 11834, at *2 (E.D. Mich. June 22, 2001) (granting injunctive relief requiring the removal of a *lis pendens* because "Plaintiff has demonstrated a solid basis for irreparable harm in that the filing of the *lis pendens* has caused its inability to sell the property"); *J.C. Penney Co., Inc. v. Giant Eagle, Inc.*, 813 F.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 24

Supp. 360, 369 (W.D. Pa. 1992) (finding irreparable harm, in part, by acknowledging that damage to one's interest in real property is generally considered unique), *aff'd*, 995 F.2d 217 (3d Cir. 1993).

The Court has already determined that Dunlop has no interest in the Property.  Consequently, the issuance of an injunction will do him no harm.

Finally, the Court concludes that the public interest is served by injunctive relief because the public has an interest in discouraging individuals from recording baseless documents against property.  Similarly, the public interest favors the free transferability of land. *See*, *e.g.*, *Rivera v. Gov't of the Virgin Islands*, 13 V.I. 42, 47 (D.V.I. 1976) (noting with disfavor "a rule [that] would discourage the free transfer of land").

Accordingly, the Court, in its discretion, will issue an injunction to prohibit Dunlop from recording documents against the Property.

**B.   Dunlop's Counterclaims**

Dunlop asserts the following causes of action: fraud, breach of contract and defamation.[18]

---

[18] Dunlop also alleges intimidation and harassment.  The Court is unaware of any cognizable cause of action encompassing either of those allegations.  To the extent Dunlop intends to

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 25

At trial, Dunlop elected not to call any witnesses or to present any evidence whatever.  Indeed, despite repeated invitations from the Court, Dunlop elected not to prosecute his counterclaims.[19]  Accordingly, for the reasons more fully stated at the trial of this matter, the Court will dismiss Dunlop's counterclaims and enter judgment for Glenn on those counterclaims.

### III.  <u>CONCLUSION</u>

---

assert a claim for intentional infliction of emotional distress, that claim fails.  To state such a claim under Virgin Islands law, a plaintiff must "allege conduct so extreme or outrageous on its face that it falls outside the bounds of decency." *Clarke v. Abramson*, Civ. No. 2004-111, 2007 U.S. Dist. LEXIS 78814, at *3 (D.V.I. Oct. 24, 2007) (quotation marks and citations omitted).

Here, Dunlop alleges that Benjamin chastised the Januarys and endeavored to conceal information from them.  Even if these allegations rose to the level of intentional infliction of emotional distress, which they clearly do not, Dunlop cannot assert such a claim on behalf of third parties.

[19]  After Dunlop made clear that he did not intend to present any evidence, the Court dismissed his counterclaims for failure to prosecute from the bench.  Approximately one week after the trial, Dunlop filed a document entitled "Defendant's Declaration in Opposition and Argument against Order to Dismiss Counter-Claim for Failure to Prosecute."  In that document, Dunlop seems to assert that Glenn failed to respond to certain discovery requests.  Dunlop never raised those assertions either before or during the trial.  Dunlop also restates his theory of fraud on the part of Glenn and various non-parties to this lawsuit.

Approximately two weeks after the trial, Dunlop filed a document entitled "Defendant's Motion to Dismiss Complaint."  That document reiterates many of the contentions asserted in the document described above.  It also includes several exhibits.

The Court has given due consideration to both of these documents, neither one of which raises any meritorious issue.

*Glenn v. Dunlop*
Civil No. 2005-145
Memorandum Opinion
Page 26

For the reasons discussed above, the Court will enter a judgment declaring that the Trust owns the Property in fee simple absolute.  The Court will also issue an injunction to compel Dunlop to remove any and all documents he has recorded against the Property.  The Court will enter judgment for Dunlop on Glenn's remaining claims.  Finally, the Court will dismiss Dunlop's counterclaims.  Pursuant to Federal Rule of Civil Procedure 58(a), an appropriate judgment follows.

S_____
    **CURTIS V. GÓMEZ**
      **Chief Judge**